UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                  07 Cr. 445 (JSR)

       - v. -

                                  FILED ELECTRONICALLY

RAYMOND CHARLES ALBERT,
                         Defendant.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## <u>OF DEFENDANT'S MOTION TO SUPPRESS</u>

Edward V. Sapone, Esq.
Law Offices of Edward V. Sapone
Attorney for Defendant
Raymond Charles Albert
One Penn Plaza, Suite 5315
New York, NY 10119
(212) 974-0600

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

THE COURT SHOULD SUPPRESS MR. ALBERT'S
STATEMENTS, AND ANY FRUITS THEREOF,
AS THEY WERE INVOLUNTARY AND
ELICITED IN VIOLATION OF THE 5TH
AMENDMENT AND <u>MIRANDA V. ARIZONA</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II

THE COURT SHOULD SUPPRESS MR. ALBERT'S STATEMENTS AS THEY
WERE ELICITED UNLAWFULLY
WITHOUT A VALID WAIVER OF SPEEDY PRESENTMENT . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

## **TABLE OF AUTHORITIES**

### **CASES**

*Colorado v. Connelly*, 479 U.S. 157 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 12

*Dickerson  v. United States*, 530 U.S. 428 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mallory v. United States*, 354 U.S. 449 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Michigan v. Mosley*, 423 U.S. 96 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Miranda v. Arizona*, 384 U.S. 436 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Missouri v. Seibert*, 542 U.S. 600 (2004) . . . . . . . . . . . . . . . . . . . . . .8, 9, 10, 12, 13, 14

*Moran v. Burbine*, 475 U.S. 412 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13

*Oregon v. Elstad*, 470 U.S. 298 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Alvarez-Sanchez*, 511 U.S. 350 (1994) . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Berkovich*, 932 F.Supp. 582 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . .17

*United States v. Carter,* 2007 WL 1662061 (2d Cir. June 8, 2007) . . . . . . . . . . . . . . . . 8

*United States v. Colon*, 835 F.2d 27 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Fullwood*, 86 F.3d 27 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . .. . . . 16

*United States v. Male Juvenile*, 121 F.3d 34 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . .12

*United States v. Miller*, 382 F. Supp. 2d 350 (N.D.N.Y. 2005) . .. . . . . . . . . . . . . . . . . 13

*United States v. Perez*, 733 F.2d 1026 (2d Cir. 1984) . . . .. . . . . . . . . . . . . . . . . . . . . 16

*Wong Sun v. United States*, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **STATUTES**

Amend. V, U.S. Const. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 3501(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Rule 5(a), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Rule 5(a)(1)(A), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .15

Rule 5(c), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Rule 5(c)(1), Fed.R.Crim.P . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,


     - v. -

                                              07 Cr. 445 (JSR)


RAYMOND CHARLES ALBERT,
                             Defendant.
-------------------------------------------------------------------X


## MEMORANDUM OF LAW SUBMITTED
## ON BEHALF OF DEFENDANT RAYMOND CHARLES ALBERT


### INTRODUCTION

     This Memorandum of Law is submitted on behalf of Defendant Raymond Charles Albert in support of his motion to suppress post-arrest statements, and for other relief.


### STATEMENT OF FACTS

     On May 19, 2007, special agents with the Drug Enforcement Administration ("DEA") arrested Mr. Albert, who was charged with distributing and possessing with intent to distribute controlled substances, specifically heroin and cocaine.  Mr. Albert is accused by the instant indictment of participating in a conspiracy involving at least four kilograms of heroin and three kilograms of cocaine, in violation of Title 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846.  Specifically, the government contends that Mr. Albert agreed to go to a motel in Queens County, New York to pick-up a bag and bring the bag to a man at a nearby diner, in exchange for financial compensation.

On Saturday, May 19, 2007, at 6:10 p.m., approximately five plain-clothed DEA agents approached Mr. Albert, each with their firearms drawn. As the agents neared Mr. Albert, they pointed their firearms at him and ordered him onto the ground.

As Mr. Albert was lowering himself to the ground, approximately five additional plain-clothed agents, also visibly armed, tackled him from behind, pushing him face down onto the ground. Mr. Albert was placed in handcuffs and told he was under arrest. He was not advised of his Miranda rights.

Following Mr. Albert's arrest, he was taken to a government vehicle. As the agents led Mr. Albert through the hotel parking lot to the vehicle, the agents immediately began to question Mr. Albert about a suitcase, even though Miranda warnings had not been administered.

When they reached the van, Mr. Albert was told to get inside. Once inside the van, the agents identified themselves as special agents with the DEA. Mr. Albert, who was still handcuffed, was forced to remain seated inside the vehicle, surrounded by three armed DEA agents.

Once securely inside the government's vehicle, the agents still did not Mirandize Mr. Albert. Instead, two agents inside the vehicle resumed the interrogation initiated in the parking lot. The agents asked Mr. Albert questions regarding a suitcase, narcotics, hotel/motel rooms, money, and other individuals allegedly involved. Mr. Albert responded to the agents' questions.

The agents told Mr. Albert that drugs had been recovered in a suitcase. The agents threatened Mr. Albert, telling him that he was going to go to jail for at least "20 to 25 years," and maybe "for the rest of [his] life."

Next, the agents drove Mr. Albert to a nearby diner in the hopes of having Mr. Albert identify an individual they believed to be involved. While transporting Mr. Albert to the diner, the agents continued questioning him, repeating their previous questions. Mr. Albert responded to these questions.

Once they arrived at the diner, they remained in the van, waiting for approximately one hour.   During this time, the agents continued to question Mr. Albert. In addition, one of the agents asked Mr. Albert a series of personal questions such as whether he has children, if his parents are still alive, whether he has a better relationship with his mother or his father, his age, whether he is married or single and where he lives. The agent repeatedly told Mr. Albert that he was going to go away to jail for a long time, that he would not be present in his children's lives, that his children would be in college before Mr. Albert was released from jail, and that Mr. Albert's mother would be disappointed to learn her son was being sent to jail.

Eventually, the agents concluded that the individual they were seeking was not at the diner and that they would transport Mr. Albert to DEA headquarters located on 10th Avenue, New York, New York.

As they drove Mr. Albert from Queens to DEA headquarters, the ongoing interrogation continued, with the agents asking numerous questions they had asked earlier.  Mr. Albert, who had still yet to be <u>Mirandized</u>, stated that he wanted to speak to an attorney.  The agents responded that although it was his right to speak to an attorney, an attorney was not going to be of help to Mr. Albert as he would be spending the night in a cell while the agents were going home to their beds. Even after Mr. Albert stated that

he wanted to speak to an attorney, the agents continued to question and elicit responses from him.

Mr. Albert arrived at DEA headquarters between 8:00 p.m. and 8:20 p.m. He was not afforded an opportunity to speak to counsel, despite his request.  Instead, he was taken to a cell where he remained handcuffed. Within minutes, he was taken to be fingerprinted, and then taken to an interrogation room where there were two special agents present.  These agents had not been present earlier in the vehicle with Mr. Albert.

Mr. Albert was initially asked to "repeat what happened," but then he was told to "wait a minute" and he was presented with a waiver of rights card. The waiver had previously been filled out with checkmarks next to each "right" indicating that the right had been read and explained.  Mr. Albert, who was not advised that his prior unwarned statements could not be used against him, signed the card.  He was subsequently led through the statements he had made earlier in the evening, being asked to confirm information already known to the agents in the interrogation room.  Indeed, Mr. Albert had not yet shared this information with these agents.

While questioning Mr. Albert and attempting to elicit information from him, the agents warned him that "this is the feds, not the state," and that he was in a "different ballgame."

The second round of questioning that took place at DEA headquarters lasted approximately twenty minutes.  After which, Mr. Albert was returned to his cell.

Mr. Albert was not presented to a Judge until Monday, May 21st, between 4:00 and 5:00 p.m., approximately 48 hours after being arrested.

The coordinated and continuous line of questioning that occurred after Mr. Albert's arrest violated his constitutional rights. He was subjected to a custodial interrogation with no attorney present, even after specifically requesting one. Mr. Albert's pre and post warning statements were involuntary and elicited in violation of the 5th Amendment and <u>Miranda v. Arizona</u>, and as such should be suppressed.


## POINT I

**THE COURT SHOULD SUPPRESS MR. ALBERT'S
POST-ARREST STATEMENTS AS THEY WERE ELICITED
IN VIOLATION OF THE FIFTH AMENDMENT AND
*MIRANDA V. ARIZONA* OR WERE OTHERWISE INVOLUNTARY**


**A.**    **<u>The Statements Elicited From Mr. Albert Prior to His Being
Transported to DEA Headquarters Should be Suppressed Because
They Were the Fruits of a Custodial Interrogation Absent *Miranda*
Warnings</u>**

Mr. Albert's post-arrest statements elicited prior to his transportation to DEA headquarters should be suppressed, because the statements were elicited during a custodial interrogation absent <u>Miranda</u> warnings.

When the police interrogate a suspect who is in custody, any resulting statement is inadmissible against the suspect unless the Government demonstrates that, prior to questioning, the police adequately advised the suspect of his or her <u>Miranda</u> rights. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45 (1966), *cert. denied*, 396 U.S. 868, 90 S. Ct. 140 (1969) (explaining that by "custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.").

The Government has a heavy burden to show a voluntary and intelligent waiver of

these rights. See Id., at 444-45; see also, Colorado v. Connelly, 479 U.S. 157, 168 (1986). If at any time, before or during the course of the interrogation the suspect invokes his or her right to remain silent or to have counsel present, the interrogation must cease. Miranda, 384 U.S. at 473-74 (requiring that "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.").

Once invoked, the suspect's right to silence must be scrupulously honored. Id., at 479; Michigan V. Mosley, 423 U.S. 96, 103 (1975).

The constitutional basis of Miranda is grounded in the 5th Amendment, and underscored by Supreme Court holdings which explain that custodial police interrogation is inherently coercive, and may lead to compelled self-incrimination. Miranda, 384 U.S. at 444-445; Dickerson v. United States, 530 U.S. 428, 435 (2000).

Here, on May 19, 2007, federal agents advised Mr. Albert that he was under arrest. The agents, who were visibly armed, placed him in handcuffs and escorted him to a government vehicle where he was instructed to step inside. Once inside, he remained handcuffed and seated for approximately two hours while in the presence of three armed agents. During these two hours, Mr. Albert was subjected to a continuous interrogation until he was transported to DEA headquarters, at which point there was a brief pause in the interrogation.

During the two-hour custodial interrogation, Mr. Albert specifically stated that he did not wish to speak to the agents and that he wanted to speak to an attorney. Despite Mr. Albert's clear assertion, the agents did not cease their questioning. Instead, they

continued to interrogate Mr. Albert, while telling Mr. Albert that an attorney would be of "no help to him," and that he was "going to go to jail."

During the two hours that Mr. Albert remained handcuffed and confined in the government's vehicle, he made statements to the agents in which he allegedly admitted, among other things, that he had been hired to go to a motel to pick up a bag; that he did not know what the bag contained; and that he was instructed to bring the bag to a man at a diner in Queens, New York.

The Court should not find that these statements were spontaneous, voluntary statements initiated by Mr. Albert. Quite the contrary, any and all statements made by Mr. Albert were the direct result of the ongoing police interrogation.

It is undisputed that Mr. Albert had been formally arrested and was in custody in the rear of the government's van for approximately two hours. The agents should have administered <u>Miranda</u> warnings to Mr. Albert before interrogating him. However, Mr. Albert was never advised of these rights. Rather, the government agents interrogated Mr. Albert, and elicited incriminating statements from him.

Furthermore, when Mr. Albert specifically requested the assistance of an attorney, his request was met only with further interrogation.

As such, Mr. Albert's statements should be suppressed. In the alternative, the Court should order a hearing to determine the inadmissibility of Mr. Albert's statements.

**B.  <u>The Statements Elicited From Mr. Albert While at DEA Headquarters Should Be Suppressed Because They Were the Fruits of an Ineffective <i>Miranda</i> Warning and Were Otherwise Involuntary</u>**

**1.  The Subsequent <u>Miranda</u> Warning Was Ineffective**

Mr. Albert's <u>Mirandized</u> statements should be suppressed.  The <u>Miranda</u> warning given to him at DEA headquarters was ineffective, given that the agents already elicited the incriminating statements prior to giving the warning.  Also, this practice of <u>Mirandizing</u> a suspect after eliciting incriminating statements undermines the purpose for administering a <u>Miranda</u> warning upon a formal arrest or custodial interrogation.

The purpose of the <u>Miranda</u> warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation, and that any waiver of such rights is knowing, intelligent and voluntary. <u>United States v. Carter,</u> 2007 WL 1662061, 4 (2nd Cir. June 8, 2007).

The goal of protecting a person's 5th Amendment rights as set forth in <u>Miranda</u> has been challenged by the police practice (or technique) of interrogating a suspect in successive phases -- the first, absent the administration of the <u>Miranda</u> warning, and the second, after the proper warning.   <u>Missouri v. Seibert,</u> 542 U.S. 600, 609, 124 S. Ct. 2601 (2004).  As a result, on two separate occasions the Supreme Court has had to address the admissibility of post-warning statements, obtained after an earlier statement elicited absent a <u>Miranda</u> warning.

In <u>Oregon v. Elstad</u>, the defendant was arrested at his home pursuant to an arrest warrant.  470 U.S. 298, 300,105 S. Ct. 1285, 1288 (1985). Prior to the arrest, one police officer spoke to the defendant's mother, while the other police officer briefly spoke to the defendant in the defendant's living room. <u>Id.</u> at 300-301.  When the officer stated that he "felt" that the defendant had been involved in a burglary, the defendant admitted that he had been present at the scene.  <u>Id.</u> at 301.  No further questions were asked. The defendant was transported to the sheriff's office where approximately one hour later, he

was <u>Mirandized</u>.  He agreed to speak with the police and at that time, gave a full

confession, including facts and details not stated earlier. <u>Id.</u>

  The Court held that the defendant's post-warning statement was admissible. In

making this determination, the Court noted that the brief discussion in the defendant's

living room had not been to formally interrogate the defendant, but rather to notify the

defendant's mother of the reason for his arrest.  <u>Id.</u> at 315.  In light of these

circumstances, the Court reasoned that the "simple failure to administer warnings,

unaccompanied by any actual coercion or other circumstances calculated to undermine

the suspect's ability to exercise his free will does not so taint the investigatory process

that a subsequent voluntary and informed waiver is ineffective for some determinate

period." <u>Id.</u> at 309. The Court's decision in <u>Elstad</u> was motivated by a concern that

voluntary confessions or statements would be excluded when an officer, acting in good-

faith, mistakenly does not realize that a suspect is in custody for the purposes of <u>Miranda</u>

and that a warning is required. <u>Missouri v. Seibert</u>, 542 U.S. 600, 620, 124 S. Ct. 2601

(2004).

  In <u>Missouri v. Seibert</u>, the Supreme Court revisited the issue of the admissibility

of a post-warning statement preceded by an earlier, unwarned statement.  In <u>Seibert</u>, the

police arrested a murder suspect and deliberately withheld administering <u>Miranda</u>

warnings in an attempt to elicit the desired statement.  542 U.S. at 605-606. The

defendant was taken to the police station where she was interrogated for approximately

30-40 minutes until she finally confessed.  <u>Id.</u> at 605. The police then allowed the

defendant to have a twenty-minute coffee break before resuming the interrogation, at

which point <u>Miranda</u> warnings were administered. <u>Id.</u> The officer then led the defendant

through her earlier statements until she had repeated her prior confession. <u>Id.</u> at 605-606.

The plurality found that the defendant's post-warning statement was inadmissible

as a deliberate, two-step interrogation strategy had been used and no curative measures

had been taken before the post-warning statement was made. <u>Id.</u> at 622 The <u>Seibert</u> Court

refused to allow a post-warning confession where a "two step interrogation technique was

used in a calculated way to undermine the <u>Miranda</u> warning," thus rendering it

ineffective. <u>Id.</u>

The <u>Seibert</u> plurality set forth several factors to consider when determining

whether a <u>Miranda</u> warning was effective:

> . . . the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

> <u>Id.</u> at 615.

The facts of this case are more similar to those of <u>Seibert</u> than to those of <u>Elstad</u>.

Here, the first round of questioning was thorough, complete and continuous,

lasting approximately two hours.  Mr. Albert was repeatedly asked numerous questions

by two agents while handcuffed and confined in the government vehicle. The questions

were specific, seeking detailed information regarding Mr. Albert's involvement in the

alleged activity, what the alleged plan was, what he knew to be in the suitcase, the

amount of money he was being compensated, the full names, addresses and descriptions

of other people involved, and what their license plate numbers were.

The second round of interrogation, conducted at the DEA headquarters, was a mere continuation of the earlier interrogation. The questions were designed to elicit responses that referred to Mr. Albert's statements previously made in the van. Mr. Albert was led through a series of questions previously asked and answered. This second round of questioning did not produce any new information. Rather, the content of the second round was identical to what had been extracted from Mr. Albert during the first round of interrogation before he was administered the <u>Miranda</u> warning.

Furthermore, both the first and second rounds were sufficiently close in time to be considered continuous. The first round of interrogation began immediately after Mr. Albert's arrest at approximately 6:15 p.m. and lasted until Mr. Albert reached DEA headquarters approximately two hours later between 8:00 p.m. and 8:15 p.m. The second round of interrogation was resumed at approximately 8:40 p.m., roughly 25 minutes after Mr. Albert's arrival at DEA headquarters.

That the second round of interrogation was conducted by different agents is of no moment. The agents from rounds one and two coordinated with each other prior to commencing the second round of questioning[1], and the agents leading round two were simply confirming information previously obtained by their colleagues.

As demonstrated above, the first and second rounds of questioning together comprise a coordinated, continuing interrogation. It is "unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject

---

[1] During the second round, one of the interrogating agents led Mr. Albert through facts of his statement that Mr. Albert had not yet shared with him. Clearly, the arresting agents that conducted round one of the interrogation discussed Mr. Albert's statements with the agents at DEA headquarters during the brief pause between rounds one and two.

to independent evaluation simply because <u>Miranda</u> warnings formally punctuate them in the middle. <u>Missouri v. Seibert</u>, 542 U.S. 600, 614, 124 S. Ct. 2601 (2004).

The second round of Mr. Albert's interrogation was simply an extension of the first unwarned interrogation. The subsequent warning and line of questioning designed to confirm earlier unwarned statements does not serve to cure the Government's initial failure to advise Mr. Albert of his rights under <u>Miranda.</u>

2. **Mr. Albert's Mirandized Statements Were Otherwise Involuntary and In Violation of the 5th Amendment**

Mr. Albert's statements were not voluntary.

When the Government contends that a defendant has voluntarily waived his <u>Miranda</u> rights, it must prove the voluntariness of the waiver by a preponderance of the evidence. <u>Missouri v. Seibert</u>, 542 U.S. 600, 609 n. 1 (2004) (<u>citing Colorado v. Connelly</u>, 479 U.S. 157, 169 [1986]). Thus, as the Supreme Court has cautioned, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension, may a court properly conclude that <u>Miranda</u> rights have been waived." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (citations omitted); <u>see United States v. Male Juvenile,</u> 121 F.3d 34, 38 (2d Cir.1997).

The voluntariness test governing a <u>Miranda</u> waiver is essentially the same test applicable to the due process inquiry concerning the voluntariness of confessions themselves:

> [a] defendant's decision to relinquish his <u>Miranda</u> rights must be voluntary, knowing and intelligent. Thus, relinquishment must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver

must have been made with full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it.

United States v. Miller, 382 F. Supp. 2d 350, 371 (N.D.N.Y. 2005).

Furthermore, the Supreme Court recently established that, "[t]he threshold question in [evaluating the voluntariness of a subsequent waiver] is whether it would be reasonable to find that the [subsequent] warnings could function 'effectively' as Miranda requires." Seibert, 542 U.S. at 601.

The Seibert Court concluded that "[t]here is no doubt about the answer. By any objective measure, it is likely that warnings withheld until after interrogation and confession will be ineffective in preparing a suspect for successive interrogation, close in time and similar in content." Id. See also Moran, 475 U.S. at 424 (finding that the injection of Miranda warnings in the midst of a coordinated and continuing interrogation are likely to "deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them").

Mr. Albert does not dispute that he signed a Miranda waiver after arriving at DEA headquarters.  However, Mr. Albert's Miranda waiver could not have been "knowing, intelligent and voluntary" due to the extreme coerciveness shrouding the circumstances surrounding his interrogation.

Mr. Albert was first read his Miranda rights (1) more than two hours after having been formally arrested; (2) having been subjected to more than two hours of coordinated and continuous custodial interrogation; (3) having been brought to an interrogation room for resumed questioning; and (4) having specifically requested an attorney and having this request ignored.

13

In addition, Mr. Albert was not advised that his prior unwarned statement could not be used against him.

These circumstances do not convey to a reasonable person that he has the option of remaining silent given that he had previously given a statement.  See Missouri v. Seibert, 542 U.S. at 612.  The Seibert Court explained that:

> "Upon hearing warnings only in the aftermath of [an] interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again.  A more likely reaction on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame of mind for [making a] knowledgeable decision."

Id. at 613.

Similarly, Mr. Albert did not voluntarily waive his Miranda rights. Rather, Mr. Albert yielded to improper tactics employed by his interrogators.  The agents' Mirandized interrogation of Mr. Albert was sufficiently close in time and similar in content to the first interrogation so as to render the Miranda warning and waiver entirely meaningless.

By "any objective measure," as set forth by the Supreme Court in Seibert, the subsequent Miranda warnings offered to Mr. Albert, after he had been subjected to custodial interrogation were "ineffective in preparing [him] for successive interrogation, close in time and similar in content" and thus render his Miranda waiver invalid.

Consequently, all of Mr. Albert's statements made after Miranda warnings were administered should be suppressed, and any evidence derived from those statements excluded as fruits of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471 (1963).

## POINT II

## THE COURT SHOULD SUPPRESS MR. ALBERT'S STATEMENTS AS THEY WERE ELICITED UNLAWFULLY WITHOUT A VALID WAIVER OF SPEEDY PRESENTMENT

Mr. Albert's statements should be suppressed because they were elicited absent a valid waiver of speedy presentment.

Presentation before a magistrate judge "without unnecessary delay" (*see* Rule 5(a), Fed.R.Crim.P.) is required under the Fifth Amendment to afford a suspect opportunity to contest the legality of his arrest, to establish the terms on which the suspect will be held or bailed, pending a preliminary hearing or grand jury proceeding, to inform a suspect of his right to retain or request appointment of counsel, and, as is particularly relevant herein, to notify a suspect of his right not to not make post-arrest statements.

In particular, the government "must take [a] defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Rule 5(a)(1)(A), Fed.R.Crim.P.

In turn, Rule 5(c)(1) provides that, if a defendant is arrested in the district where the offense was allegedly committed and "if a magistrate judge is not reasonably available, the initial appearance may be before a state or local judicial officer."

The McNabb-Mallory rule, adopted by the Supreme Court "[i]n the exercise of its supervisory authority over the administration of criminal justice in the federal courts" (McNabb v. United States, 318 U.S 332, 341 (1943)), "generally rendered inadmissible confessions made during periods of detention that  violated the prompt presentment requirement of Rule 5(a) of the Federal Rules of Criminal Procedure." United States v.

Alvarez-Sanchez, 511 U.S. 350, 354 (1994) (citing Mallory v. United States, 354 U.S. 449, 453).

As the Second Circuit has recognized, the appropriate remedy for the Government's unnecessary delay in bringing a suspect before the nearest available federal magistrate judge is suppression of prejudicial statements made during the period of delay. See United States v. Colon, 835 F.2d 27, 31 (2d Cir. 1987).

However, Congress proscribed the broad suppression offered defendants under the McNabb-Mallory rule by passing 18 U.S.C. §3501(c), which states that a confession made by a person within six hours following his arrest or other detention "shall not be inadmissible" solely because of a delay in presenting the person to a federal magistrate. See 18 U.S.C. §3501(c). Under this legislative framework, "unreasonable pre-arraignment, pre-confession delays of less than six hours" and "reasonable delays in excess of six hours" do not automatically require suppression. See United States v. Perez, 733 F.2d 1026, 1035 (2d Cir. 1984).

Although neither the Supreme Court nor the Second Circuit have held that 18 U.S.C. § 3501(c) mandates that a district court reflexively suppress all confessions made prior to presentment, yet more than six hours after arrest, the Second Circuit has established that "a district court has the discretion to suppress a confession if the delay between arrest and presentment is greater than six hours and is found by the court to be unreasonable under the circumstances." United States v. Fullwood, 86 F.3d 27, 72 31 (2d Cir. 1996).

While a defendant may waive his right to a speedy presentment before a court, the

government must show by a preponderance of the evidence that the defendant knowingly and voluntarily did so. See United States v. Berkovich, 932 F.Supp. 582, 588 (S.D.N.Y. 1996).

Mr. Albert did not sign a waiver of speedy presentment. Moreover, Mr. Albert was not presented before a magistrate judge until approximately 4:00 or 5:00 p.m. on May 21, 2007 almost 48 hours after Mr. Albert was arrested and interrogated.

Therefore, pursuant to the Fifth Amendment and 18 U.S.C. § 3501(c), Mr. Albert respectfully requests that his statements obtained on May 19, 2007 during his unlawful pre-presentment delay be suppressed because they were involuntary as a matter of law. Further, any evidence or derivative evidence seized as a consequence of the illegal pre-presentment delay suffered by Mr. Albert should be suppressed. In the alternative, the Court should conduct a hearing on the issue.

## <u>CONCLUSION</u>

We respectfully request that the court issue an order:  (1) directing that all pre-<u>Mirandized</u> statements made by Mr. Albert, and all fruits thereof, be suppressed; and (2) directing that all post-<u>Mirandized</u> statements made by Mr. Albert and all fruits thereof, be suppressed; or in the alternative, (3) permitting a hearing to be conducted to determine whether pre-warning and post-warning statements made by Mr. Albert should be suppressed; and (4) permitting a hearing to be conducted to determine whether Mr. Albert's presentment before a Court was unreasonable, and as such whether statements made during Mr. Albert's pre-presentment delay should be suppressed because they were involuntary as a matter of law.


Dated: New York, New York
       July 23, 2007

                                        Respectfully Submitted,


                                        _____/s/_____
                                        Edward V. Sapone (ES-2553)
                                        Law Offices of Edward V. Sapone
                                        Attorney for Defendant
                                        Raymond Charles Albert
                                        One Penn Plaza, Suite 5315
                                        New York, New York 10119
                                        (212) 974-0600


To:    Clerk of the Court
       United States District Court
       Southern District of New York
       500 Pearl Street
       New York, New York 10007

       Honorable Jed S. Rakoff
       United States District Judge
       United States District Court

Southern District of New York
500 Pearl Street
New York, New York 10007


cc:     Avi Weitzman, Esq.
        Assistant United States Attorney
        United States Attorney's Office
        Southern District of New York
        One Saint Andrew's Plaza
        New York, New York 10007