UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                              SI 07 Cr. 445 (JSR)

    v.

RAYMOND CHARLES ALBERT,
                Defendant.

------------------------------------------------------------------X

## SENTENCING MEMORANDUM SUBMITTED ON BEHALF OF DEFENDANT RAYMOND CHARLES ALBERT

### I.    Introduction

This memorandum is submitted on behalf of Raymond Charles Albert whose sentencing is scheduled for Wednesday, December 12, 2007, at 4:00 p.m.

Pursuant to Mr. Albert's plea agreement with the Government dated August 27, 2007, the adjusted Guidelines offense level is 26, with a sentencing range of 78 to 97 months of incarceration.

However, we respectfully suggest that such a sentencing range would yield a sentence "greater than necessary" to achieve the purposes of sentencing. We instead ask the Court to impose a more lenient, non-Guidelines sentence that reflects a consideration of the factors set forth in 18 U.S.C. § 3553(a).

### II.    Case History

On August 27, 2007, Mr. Albert accepted responsibility before the Court to Count I of the Government's Superceding Information. Count I charges Mr. Albert with Conspiracy to Distribute and Possess with the Intent to Distribute heroin, in violation of 21 U.S.C. § 846. As

stipulated by the Government and Mr. Albert in his plea agreement, the conduct involved at least 3 (three), but less than 10 (ten) kilograms of heroin. This resulted in a base offense level of 34.

Pursuant to the plea agreement however, the base offense level should be reduced as follows:

- Three levels for mitigating role, pursuant to U.S.S.G. § 3B1.2;
- Two levels for minor role, pursuant to U.S.S.G. § 3B1.2(b); and
- Three levels for timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b).

Accordingly, Mr. Albert's adjusted offense level is 26. Because Mr. Albert has six criminal history points, his criminal history category is III. Thus, the sentencing range is 78 to 97 months. However, this is a (b)(1)(c) offense, with a statutory minimum of 0 years' incarceration.

We respectfully ask the Court to consider the factors of 18 U.S.C. § 3553(a) and to impose a more lenient non-Guidelines sentence.

### III.   Argument

**A.   An Analysis of The Sentencing Factors Enumerated In 18 U.S.C. § 3553(a) Demonstrates That Mr. Albert Should Be Sentenced Below His Guidelines Sentencing Range**

Under 18 U.S.C. § 3553(a), the following factors should be considered when determining a "sufficient" sentence:

(1)   The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   The need for the sentence imposed to further the four stated purposes of sentencing, including: just punishment; afford[ing] adequate deterrence to criminal conduct; protect[ing] the public from further crimes of the defendant;

    and provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*See, e.g., United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005)

  I suggest that the Guidelines do not represent an appropriate guidepost for sentencing in this case. Instead, I ask the Court to consider a non-Guidelines sentence that is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553(a)(2).

  **i.  The Nature and Circumstances of the Underlying Offense**

  On May 19, 2007, agents of the Drug Enforcement Administration ("DEA") arrested Mr. Albert, who was charged with distributing and possessing with intent to distribute heroin and cocaine in violation of Title 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846.

  Prior to Mr. Albert's arrest, DEA agents arrested an individual in Texas who possessed and conspired to possess multiple kilograms of heroin and cocaine. Acting as a confidential informant ("CI"), this individual provided information to the DEA regarding a man referred to as "Flaco," the intended recipient of the narcotics in New York. At that time, Mr. Albert was not involved in any aspect of the conspiracy and was unknown to its members.

  On a day in late March 2007, Mr. Albert was at a local gentlemen's club in Queens, New York with his friend, Doris Feliciano, and her friends. While there, Mr. Albert met a woman named Carmen, who engaged Mr. Albert in casual conversation. While talking, Carmen asked Mr. Albert what type of work he did. He responded that he worked in construction. Mr. Albert would walk onto construction sites and receive pay as a day laborer who would sweep and keep the sites clean.

Mr. Albert saw Carmen on another occasion while with friends at a local club. Again Carmen engaged Mr. Albert in casual conversation. On this occasion, she asked Mr. Albert if he were interested in making money. This inquiry was not unusual, as Mr. Albert is a large man, standing approximately 6'1" and weighing 370 pounds, and is frequently solicited for work based on his size.

Later that same evening, Carmen introduced Mr. Albert to a man known as "Flaco" who also asked Mr. Albert whether he was interested in earning money. Neither Flaco nor Carmen provided any information as to the type of work or potential income. During his pre-sentence interview with Probation, Mr. Albert expressed that he did not know whether Flaco and Carmen were serious in their inquiries, as his conversations with them were casual and void of details. Mr. Albert left the club that evening without exchanging contact information or arranging any future meetings with Carmen or Flaco.

On May 18, 2007, while at a local club, Mr. Albert saw Carmen and Flaco. As with prior meetings, this was an unplanned, chance encounter. Flaco approached Mr. Albert and told him that he had work for him the following day. Flaco did not provide any details regarding the type of work or compensation. Flaco simply asked Mr. Albert to meet him the following day, May 19th, at the Neptune Diner, located in Queens, New York.

On May 19, 2007, Mr. Albert met Flaco at the Neptune Diner. Mr. Albert had yet to receive any information and was still unsure whether Flaco truly had work for him. Upon meeting Flaco, Flaco gave Mr. Albert a cell phone, an unspecified amount of packaged money, and instructions to go to the Westway Motor Inn. Once there, Flaco told Mr. Albert to go to a specific room, knock twice on the door, and give the man in the motel room the money in

exchange for a bag. Flaco did not describe, or even allude to, the size or contents of the bag. Flaco told Mr. Albert that upon his return he would be paid $1,000.00 (one thousand dollars).

Following his conversation with Flaco, Mr. Albert proceeded to the motel room, where he exchanged the money Flaco gave to him for a suitcase. The man in the motel room did not speak to Mr. Albert. Mr. Albert left the motel room and was arrested by five armed DEA agents while walking through the motel parking lot.

Upon his arrest, DEA agents told Mr. Albert that the bag was supposed to have contained heroin, but that the DEA seized all drugs prior to the hotel sting operation. As such, the bag that Mr. Albert picked up did not actually contain any narcotics.

Following his arrest, Mr. Albert was taken to a Government vehicle where he told DEA agents that Flaco asked him to pick up a bag at the motel and return it to him in exchange for $1,000.00. Mr. Albert further told the agents that Flaco was waiting for him to return to the Neptune Diner. For approximately two hours following his arrest, Mr. Albert helped DEA agents in an unsuccessful attempt to locate and identify Flaco. Despite Mr. Albert's cooperation and assistance, Flaco the target of the conspiracy, was never apprehended.

Mr. Albert's role in the conspiracy was minor. His involvement is limited to picking up a bag on the last day of the conspiracy in exchange for payment in the amount of $1,000.00. Mr. Albert was never informed of the intended contents of the bag, and he never had actual knowledge of the existence or goals of the conspiracy. Mr. Albert made a poor decision when he agreed to pick up a bag in exchange for financial compensation, but he never fully appreciated the true nature of what he was involved in until after his arrest.

### ii. Mr. Albert's History and Characteristics

Mr. Albert has not made excuses for the decision he made on May 19th. Instead, he has wholeheartedly accepted responsibility for his actions. Without offering an excuse, I do, however, offer Mr. Albert's background to explain how he could be led to make such a mistake.

#### a. Mr. Albert's Family History

Mr. Albert was born on February 3, 1972 in Brooklyn, New York. The oldest of six children, Mr. Albert was expected to assist his parents in caring for his younger siblings and contributing financially to the family. Mr. Albert's Aunt, Linda Bosco, writes that "at a young age Raymond took over many responsibilities" including acting as a "role model" to his cousins and five younger siblings. See, letter written by Linda Bosco, annexed hereto. Although Mr. Albert shouldered significant responsibility at a young age, he did not receive much guidance or assistance with respect to his own life.

Education was not made a priority for Mr. Albert, and he was forced to leave high school while in the 11th grade because he was too old to continue.

With no real formal education or job skills, Mr. Albert struggled financially, and made poor choices. Nonetheless, Mr. Albert is "an important part" of a large, close-knit family that has always relied on him to care for their elderly, as well as a number of nieces and nephews. See, letter written by Stacy Albert, annexed hereto.

Mr. Albert has three children, Desiree Albert; Kiara Albert; and Raymond Charles Albert, Jr. Mr. Albert has developed and maintained relationships with each child, and is active in their lives, supporting them emotionally and financially. Mr. Albert's friend, Doris Feliciano, writes that Mr. Albert's children, "depend on him and need him in their daily lives." See, letter written by Doris Feliciano, annexed hereto.

Melinda Cardoza, the grandmother of Mr. Albert's oldest daughter, Desiree Albert, describes Mr. Albert as a "loving, caring father who takes great pride" in being a father. See, letter written by Melinda Cardoza, annexed hereto. Likewise, Deborah Sanchez, Desiree Albert's mother, also describes Mr. Albert as a "great father" who "has proven himself as a dad and as a friend." See, letter written by Deborah Sanchez, annexed hereto.

Mr. Albert also shares a close bond with his sister, Loriann Albert, and her five children, Matt; Kevin; Kaitlyn; Jeffrey; Alice and Nicole. When Ms. Albert's partner, Roberto and their youngest son, Jayke were tragically killed in a plane crash in 2001, Mr. Albert was instrumental in helping his sister and her children cope with their loss. Ms. Albert writes:

> "When my partner died in 2001, Raymond became a mentor and father figure to my children. I depend on him a lot and try to help him as he has children too. We help each other and stress the importance of cousins and family."

See, letter written by Loriann Albert, annexed hereto.

Their sister, Roxanne Putnam, further describes how Mr. Albert has helped their family, writing that,

> "Raymond is a caring, kind-hearted person who goes out of his way to help others. He … truly cares about the well being of others, especially his family. Most recently he helped take care of our father when he was sick and helped make funeral arrangements for our Aunt Cathy, who suddenly passed away. He also makes sure he keeps a close eye on his nieces and nephews, because they do not have a father of their own."

See, letter written by Roxanne Putnam, annexed hereto.

Ruth Mejia, a friend of the Albert family, wants the Court to know how important Mr. Albert is to many people. She writes that his family and friends "will suffer a great deal if he is removed from the family" as he is a "great friend, a great father, a great son [and a] great uncle."

Ms. Mejia describes Mr. Albert as "a great human being" who is "a big support system" in the "good time and bad times." See, letter written by Ruth Mejia, annexed hereto.

Mr. Albert has made great efforts in the last seven and a half years to live a law-abiding life. Specifically, Mr. Albert attempted to find legitimate employment so as to provide financial support for his children and family. His employment options are limited however, due in part to a lack of educational and vocational skills, but also to physical limitations.

### b. Mr. Albert's Physical Limitations

Approximately five years ago, Mr. Albert was involved in a work-related accident while roofing, injuring his right hand as a result. Mr. Albert, who is right handed, continues to experience cramping, numbness and tingling when using this hand for prolonged periods of time.

Around the same time, Mr. Albert was involved in an unrelated jet skiing accident. As a result, three of Mr. Albert's toes on his left foot were severed. Although surgeons were able to re-attach two of the three toes, Mr. Albert experiences pain when standing or walking for an extended period of time.

While receiving treatment for these injuries at Wyckoff Heights Medical Center, Mr. Albert was diagnosed with a heart condition and high blood pressure. Mr. Albert was prescribed medication for his heart and blood pressure, which he continues to take to this day.

Recently, doctors at Wyckoff Heights Medical Center advised Mr. Albert that in addition to high blood pressure and a weak heart, he has developed a kidney condition as a consequence of his diagnosed obesity. A team of physicians and a nutritionist developed a weight loss program that Mr. Albert implemented during recent months to lower his blood pressure and to relieve stress placed on his heart and kidneys. Mr. Albert requires regular access to specialized health care and monitoring for his heart and kidney. Currently, Mr. Albert attends regularly

scheduled physician appointments to monitor his heart and kidneys and to conduct further diagnostic testing.

### c.    Mr. Albert's Character

Despite many obstacles throughout his life, Mr. Albert has never given up and continues to strive to improve himself and be a contributing member of society.  Although Mr. Albert has remained on home detention since his arrest, he has used this time constructively, working towards rehabilitation.

In an effort to become gainfully employed and with the permission of Pre-Trial Services, Mr. Albert has been seeking employment.  Mr. Albert was offered a position at a local car dealership, however the owner would only agree to pay Mr. Albert "off the books." Mr. Albert immediately reported this offer to Pre-Trial Services, and refused to accept the position. Mr. Albert currently has employment applications pending with The Home Depot, as well as Lowes, both located in Queens, New York.

Mr. Albert is a hard-working person, who learns from his mistakes and uses his mistakes to help others make better decisions. Those who know Mr. Albert speak highly of his character and how he always seeks to help those around him.

Mr. Albert's fourteen-year-old daughter, Desiree Albert, writes in her letter to the Court:

> I spend as much time as I can with my father and tell him what I have been up to… My dad has always been an important part of my life. He is there for me and helps keep me focused on being all I can be to become a successful young lady.  He always shows interest in all I do and tries to be understanding… Even though sometimes he doesn't agree with what I want to do in life, he still puts effort in trying to help me understand which direction I should follow.

See, letter written by Desiree Albert, annexed hereto.

Mr. Albert's cousin, Toni Lynn Bosco, writes that Mr. Albert is an "excellent role model" who helps her children with their homework, attends field trips and takes them on outings. Importantly, Ms. Bosco notes that her nine-year-old son's performance in school has improved as a result of Mr. Albert's guidance. <u>See</u>, letter written by Toni Lynn Bosco, annexed hereto.

Brenda Arocho, a family friend, echoes this sentiment, stating that Mr. Albert is a "very positive, active role model" in her children's lives. Specifically, Ms. Arocho expresses that Mr. Albert "tries his hardest to encourage and support [her children] in every way." <u>See</u>, letter written by Brenda Arocho, annexed hereto.

Family friend, Brenda Rosado, a caseworker for Edwin Gould Services for Children and Families, shares with the Court that Mr. Albert demonstrates "great character and a big heart" by helping her to mentor youth within her organization. Ms. Rosado writes that because Mr. Albert comes from a "troubled background" many of the teenagers in her organization relate to Mr. Albert and respect him. Ms. Rosado notes that with Mr. Albert's help, some of the young adults she works with have improved at home and school. Ms. Rosado acknowledges that Mr. Albert possesses a desire to lead others along a productive path, and she is confident that "if given an opportunity Mr. Albert can be a great influence to a lot of teens and a great leader." <u>See,</u> letter written by Brenda Rosado, annexed hereto.

Another family friend, Shaneil Garcia, describes Mr. Albert as a "good father, who is always focused on his children's education, as well as his family's well being." Ms. Garcia herself has relied on Mr. Albert to help her occasionally when she is unable to pick up her own children from school and trusts Mr. Albert "without question." She writes to the Court that Mr. Albert is "always willing to help family and friends in times of need." <u>See</u>, letter written by Shaneil Garcia, annexed hereto.

Family friend, Antonio Castillo, shares that Mr. Albert "has helped many people in various situations," such as helping people move; repairing cars for people who are unable to afford a mechanic; repairing bicycles for neighborhood children, and even opening his home to people who have no other place to go to. See, letter written by Antonio Castillo, annexed hereto.

Jose Torres, another family friend, describes Mr. Albert as a "great friend who is honest, trustworthy and dependable." Mr. Torres further writes,

> "when I was moving and had no one to help me, Mr. Albert offered to help … from the kindness of his heart. He is the type of person who is willing to lend [a] hand to whomever is in need."

See, letter written by Jose Torres, annexed hereto.

Family friend, Nicole Sassone, adds that,

> "whenever I needed help with anything [Raymond] was the first to offer help. He was there for me when I went into labor. [He] drove me to the hospital and waited with me until my fiancée got to the hospital."

See, letter written by Nicole Sasson, annexed hereto.

So many people credit Mr. Albert with helping them in times of need and providing support. These letters are a testament to Mr. Albert's commitment to family, his kindness and his many efforts to help others. The examples provided demonstrate that the core of Mr. Albert's character is not defined by isolated incidents of poor judgment, but rather is founded upon good principles and ideals. This is important not only as it relates to a § 3553(a) analysis, but also because it highlights the aberrant nature of the instant misconduct. Every sentencing court is undoubtedly concerned with the question of whether a defendant's sentence will provide sufficient rehabilitation and deterrence such that the defendant will become a productive member of society who does not repeat misconduct. I respectfully suggest to the Court that Mr. Albert

understands that he made a mistake that is likely never to be repeated. We respectfully request that the Court consider Mr. Albert's character and history during sentencing.

### iii. A Lenient Non-Guidelines Sentence Under 18 U.S.C. § 3553(a) Will Fulfill The Purposes of Sentencing

18 U.S.C. § 3553(a) directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

Subsection 2, in turn, enumerates the following purposes:

> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

These four objectives weigh decisively in Mr. Albert's favor and in favor of a non-Guidelines sentence. Accordingly, we respectfully request that based on the foregoing and an evaluation of the factors set forth in §3553(a), the Court impose a lenient non-Guidelines sentence.

**Conclusion**

On behalf of Mr. Albert and his family, I thank the Court in advance for taking the time to consider our sentencing submissions. We look forward to addressing the Court during the sentencing hearing on December 12, 2007.

Dated: New York, New York
        December 5, 2007

                                                    Respectfully submitted,

                                                    _____/s/_____
                                                    Edward V. Sapone (ES-2553)
                                                    Counsel for Defendant
                                                    Raymond Charles Albert

cc:
    Avi Weitzman, Esq.
    Assistant United States Attorney
    United States Attorney's Office
    Southern District of New York
    One Saint Andrew's Plaza
    New York, New York 10007